12-2692, the Dog Pound v. City of Monroe, Ohio, court ordinance, not to exceed 15 minutes, but Chappell to the appellant. Good morning, may it please the court. My name is Eric Chappell. I represent the Dog Pound in this appeal. I would like to reserve three minutes for rebuttal, please. Thank you, Your Honor. As the panel is aware, this case involves the application of a local city ordinance against an entity that applied to operate a mobile hot dog cart in downtown Monroe, Michigan. The operation of the ordinance set forth a general licensing provision, and then at the end of the ordinance indicated that if the operator intended to be on any city sidewalk, city street in the downtown area, and that was defined as a restricted area, that the operator needed to obtain permission from the mayor and the city council to operate within the restricted area. Now the application and the timing in this case is important with respect to some of the assignments of error that we've made in this particular case, because after the lawsuit was filed, and one of the claims made in the lawsuit was that the restricted area portion of the ordinance did not have any specific standards as to guide anyone relative to when the mayor or the city council would approve the ability to operate within the restricted area. So the lawsuit was filed in 2009, July 2009. There was a TRO motion that was filed in September of 2009. There were significant settlement discussions that occurred over a period of time, and there were some delays in the case as a result of some extraneous issues. But ultimately the city of Monroe, before that issue was decided, elected to amend its ordinance to remove the restricted area component of the ordinance. So in this particular case, the argument that was advanced by the appellant that the particular ordinance with the addition of the restricted area section did not have any specific standards was never ruled upon. But it was still relevant to a determination in the case because there was a two-year period, two particular summers, where the appellants were not able to operate within that restricted area. Going forward, after the amendment, specifically, what is it you don't like about the amended ordinance? Your Honor, we are also challenging, well, there's two things. Number one, I believe that the definition, the distinction between what a hawker and peddler is and what a transit merchant is, is fairly vague. And it is our position that the city has been a little circumspect about wanting to tell us which one we are. Are we a hawker or a peddler? Are we a transit merchant? And what turns on that? Well, the issue then becomes if you're a hawker and peddler, there's a 10-minute restriction that would limit any particular operator from being in one location within 10 minutes. Our other argument, if it's applied, if it applies, would be that the ordinance doesn't indicate how long or how far, in particular, how far you would have to move your mobile stand. But have you, for example, have you applied for the permit saying we are a transient merchant? Yes. And what has become of that? A permit was granted. They did operate this last summer in the summer of 2013. And it was granted for which? Well, I believe it was granted as a transient merchant. Because nobody made the move, right? Correct, correct. However, they... It doesn't say what you got? It does not. It's a common application that applies to both transit merchants and hawker and peddlers. It's the same form. They were able to operate in 2013. Yes. What's your gripe? Well, the gripe is, number one, we had damages as a result of the inability to operate for a two-year period. Now, there was a period of time in... Now, by the time the TRO was denied, it was in late 2012, but there was a one-year period of time where my client didn't get a commissary application from the Department of Health. So there's actually a two-year period of time... They didn't get an application? Didn't get a permit, Your Honor. They didn't apply for it. They didn't submit for it? I mean, wouldn't that be just a state administrative... They did. It sounds like health and safety regulation, you can appeal that through some state administrative process, right? And more to do with having an available kitchen. You actually have to have an application. Okay, but that's not part of this suit, correct? It only explains why there's a period of time for where we're requesting damages, and then there's actually a one-year break where, in fairness, they didn't complete the application process. What did the judge do with that claim? I don't think he addressed it. Interestingly, when he denied the TRO as being moot as a result of the amendment of the ordinance, he specifically stated in the opinion that the issue of damages was still a live controversy. When he ultimately granted the motion for summary judgment that was filed in 2012, there was no discussion about it at all. Did you ask for re-hearings? We did not ask for reconsideration. We just filed the appeal. And in your brief before us, and help me if I'm wrong, all that I see about damages is just your statement in the summary that they erred when it dismissed the claim for damages, but there's no argument anyplace else in the brief about that. Is that right? We do address the factual foundation for the plaintiff's damages. I believe it's on page 15 of our brief where we set forth the factual underpinnings. Okay, but just having it in the, you know, there's the sort of general rule about some attempt at developed argumentation. Is there anything, you know, you're right, that's before you get to the summary of argument. You use the word damages on page 17, and then I don't find anything thereafter. Is that fair? I don't think that's a fair reading of the brief, Your Honor, because I know that we even compared the earlier opinion on the TRO application to the later decision on the summary judgment, noting that the court, it was seemingly absent from the court's determination. Well, it's your first issue for review, right? I'm just moving to the table. Well, I'm not sure that there's any real argument on that. And there's not anything about damages was kind of what I was focusing on. Well, the predicate of the motion for summary judgment was that there was no, that he dismissed our legal claims. But I'm noting that the court never addressed many of the constitutional arguments with respect to that two-year period. Notably, with respect to the lack of standards argument, if there was a determination on that, and we believe it would be favorable to the appellant, there would be then a finding that the ordinance as it existed before the amendment was constitutionally invalid. If it's constitutionally invalid, then we're entitled to present our claims to the trier effect. Give me the connection between the existence of the restricted area and the lack of standards. Is it that even though the area was restricted, some businesses could operate within it? You actually, any business would have to just get permission from the mayor and the city council. Did you ever ask for that permission? They did, and it was denied. And when it was denied, the city council was specific in the comments that the reason they were denying it is that they felt it was unfair for the local merchants who were paying real estate taxes to have someone with a mobile business operating in the same area and therefore not having the burden of taxes. There are two council individuals who specifically expressed that they felt that would be an unfair proposition, and therefore they expressed their intent to protect local merchants versus any mobile vendor who would want to operate. For your dormant commerce clause argument, though, where is the interstate out-of-state in the sense that a business owner might be Wal-Mart from somewhere and not be local and your transient merchants could be either out-of-state or in-state? I mean, it seems to me I can understand your saying protectionism of bricks and mortar, but that doesn't intrinsically tie it to in-state, out-of-state, which is what the dormant commerce clause is about. The connection to interstate commerce we felt was best established through the purchase of a hot dog cart that came from out-of-state. The hot dog cart itself cost nearly $8,000. Yes, but a storefront, bricks and mortar, could have bought a similar cart from out-of-state. So, again, the dormant commerce clause requires something that, based on citizenship, discriminates between in-state and out-of-state people. It's not that there's not a connection to commerce in order to get jurisdiction, but I'm asking you where in it is there anything that says, for example, that an out-of-state hot dog vendor would not be able to operate or maybe your people are local, right? They are. So they can't be being discriminated against for being out-of-state. It's the impact upon interstate commerce that we believe creates the violation, rather than the issue of citizenship with respect to that. Okay, with respect, I think the dormant commerce clause isn't about impact. It's about discrimination between the two, not that you're just impacting it, because otherwise everything that restricted businesses in any way would affect interstate commerce because almost everybody buys something from out-of-state. I don't know that I would, and if I could use the Coors case out of Puerto Rico as a way of addressing that argument. Sorry, the name of the case, Coors? Coors. Oh, it's beer? It's the Coors beer? Fine, go ahead. And in that particular case, the issue there was the local authorities had an ordinance that significantly taxed any out-of-area brewers or any out-of-area brewers, and there was a local connection with respect to the brewers as well who had distributorships within the province of Puerto Rico. But the issue was, is because the beer wasn't brewed in Puerto Rico, that they then were subject to higher taxes. So in that particular case, I think it demonstrates that you can have local individuals who may have the same citizenship, but based upon their relation to... I don't think that's what Judge Boggs was getting at, because there, if you look at the situation, you have an ordinance that burdens, that distinguishes between locally produced and foreign produced beer. But here, this ordinance doesn't say if you are from within 90 miles of Monroe, you don't need a permit. But any further, you do. My assertion is that the discriminatory effect doesn't turn upon whether or not you are a local citizen. The discriminatory effect turns upon whether it has an impact upon interstate commerce. I want to go back to damages. Yes. On page 15 of your brief, you list your evidence of damages. Remind me, was that submitted to the district court in the form of an affidavit? It was, Your Honor. It was actually a spreadsheet that went along with the affidavit as well. Is there anywhere in your brief that you make the argument that that evidence precluded summary judgment on that issue, as opposed to some more sophisticated argument on damages? Without having the opportunity to review the brief in significant detail, Your Honor, I can't tell you that I have a page number ready for that. But I will note. And the spreadsheet you're referring to, is this Exhibit 2, page ID 773 to 775? That's correct, Your Honor. All right. Thank you, Counsel. You'll have your time for rebuttal. Thank you. Good morning, Your Honors. Sarah Nadeau on behalf of the Defendant Appelee. So why did the judge dismiss the damage claim? Well, the judge stated pretty clearly that he believed there was no factual support for the damages claim. There was a deposition taken of the owner of the Dog Pound. And she stated several different times, in several different ways, several different beliefs that she had of what kind of damages she would be able to establish. We're talking mostly about projected losses here because there was no actual loss that she could substantiate since she didn't operate her cart for two years. But on page 24 of her deposition, she indicated she thought she would make about $130 a week net. On page 25, she thought maybe $190 a week gross. On page 30, she changed it to about $100 a day net. On page 35, she decided it would be $200 a week gross. And on page 38, she believed, again, $100 a day in sales. So sales obviously being different than the net. So I think what the judge basically determined was the plaintiff had no idea and couldn't establish a claim for damages or what her damages might be. And because the burden was on her to do that in light of our motion for summary judgment, she failed to substantiate her claim. That's a reasonable supposition. Is there anything in the judge's different orders that adverts to that? Well, he states that she did not factually support the claim. And let me try to find that in the page of his opinion. Let's see. I believe it's this opinion. Yes. All right. Let's see. The page number is. Oh, dear, I only have the. Can you refer to it in some other way? I can. It's paragraph 7. Of his order of? 2012. Granting our motion for summary judgment. He states the second amended complaint may be fairly read as asserting some claim for damages for that five-month period under the 1996 language, although it does not plausibly. Five-month period. Is that referring to a period after the 2011 ordinance? No, Your Honor. That's referring to the 2009 ordinance. Okay. Page 7 of his 2012 order. Okay. Yes. And he goes on to state, although it does not plausibly develop any factual or legal arguments in support of its conclusory claims. So I believe that's the basis for the judge's decision. Okay. Was that before or after this was submitted, the affidavit? This was after. This was in response to our motion for summary. This was his order granting our motion for summary judgment. So plaintiff would have had to present all of the evidence in support of their claim for damages. And all of the evidence that was supported was that, I believe, that table that you referred to, Your Honor, and her deposition itself, which as I stated the deposition was unclear at best as to what her damages may have been. Plaintiff does suggest that there was potentially damages for a two-year period, 2009-2010, when the restricted area was in effect, although plaintiff did concede and we argued that the dog pond didn't even have a commissary permit for 2010 and thus couldn't have operated anyway. She didn't apply for one. And so 2010, arguably, she also didn't file an application with the city to get a license in 2010. So while she alleges that we would have denied it. What's the distinction between what you just said about not applying for a license and what he says about asking the mayor and city council for permission to operate in the restricted area? Plaintiff was issued a license in 2009. She applied for a license. She was issued that license, and that meant that she could sell with her hot dog cart. However, at that time in 2009, prior to the amended ordinance, you also needed to seek, if you wanted to sell in downtown Monroe, a special permission from the mayor and the city council that allowed you to do that in the restricted area. As we've noted, in 2011 that ordinance was amended and that restricted area was removed, and subsequent to that, you could sell in the downtown area, which the dog pound now is. But in 2009 and 2010, they remained a restricted area. So there was a license application process, and then. So you do say she did get a permit, and she did ask the city council, and it was denied. Is that fair? In 2009, she received a license, requested to sell in the restricted area, and was denied the restricted area. She was not denied sales. She could sell anywhere else around, but not in the restricted area. But at least in principle, she was not able to sell in the restricted area because of the effect of the ordinance plus the effect of the city council not allowing her to. Is that correct? Correct. The city council, and as Plans Council pointed out at the city council meeting, one of the reasons that she was not allowed to sell in the restricted area was because there was this concern about a burden on the taxpaying brick-and-mortar businesses. Is there evidence in the record as to whether others had been given permission to operate in the restricted area? My understanding is no one else had ever been given permission to operate there, and still has not. I believe she's the only vendor that operates off of the. Well, but now she doesn't need permission to operate in the restricted area. There is no restricted area. Correct. One of the other reasons given by the city council was that there was a concern for congestion and traffic flow. It's a very large cart. It's substantial. It's the Hummer. It's a wonderful cart. It's the Hummer. It's the world's best cart, in fact. And there was some response from the city that, look, our sidewalks are only so big. If you put it on the sidewalk, people are going to have to move around you, into the streets, et cetera. And so there was some concern about that. And the district court found that that was a legitimate purpose for the city, and it had a rational basis to restrict her permission. What about the distinction between transient merchants, on the one hand, and hawkers and peddlers? Does the application distinguish between them? Do you apply as one or another? According to the city, you are granted an application both as a hawker peddler and a transient merchant. There is no distinction other than the city views the transient merchant as an operator on private property and a hawker peddler on public property. Why are they moved every 10 minutes if they're on public property? So if they're on public property, they have to move every 10 minutes. Now, is that distinction, which is at least I can understand why you might say that, is that embodied in any document, regulation, ordinance anywhere? I think it could be loosely interpreted from the ordinance, but I wouldn't say that it's crystal clear. But then you both say that she has been operating. What kind of private property has she been on? She's been on public property, and she has been subject to the 10-minute rule. And my understanding is that she has not always followed it, and the city has tried to be relatively generous about that, I think partly because there's a lawsuit pending, and we're all waiting to see what the result will be. It would be nice if you enforced the ordinance as written. I mean, they're not a hawker or a peddler. Well, no, arguably they are a transient merchant, which means that she can operate anywhere, but if she operates on private property, she's protected from the 10-minute rule, and she's not doing that. Wait a minute. If she's a transient merchant, then she's not subject to the 10-minute rule. I mean, your ordinance doesn't distinguish between private and public property, does it? Not in its words. Not in crystal clear language, no, it does not. It's more of an application of the ordinance as the city is currently applying it. Well, how is she supposed to know? Well, she's been in discussions with the city numerous times, and so she has full understanding of the city's, the way that the city is implementing it. But at least thus far, you know, whatever discussions there's been, you haven't, I mean, if you said we're going to throw you out because you're violating the 10-minute rule and you're not a transient merchant, then we might have a different lawsuit, but at least at the moment that hasn't happened, I take it. At this point, they have, on occasion when she has violated the 10-minute rule, asked her to move, and on occasion she has moved, and thus the problem has been averted. Okay, but there really is no definition. I mean, from language, maybe we all, I don't know whether you were making the same thing, that a hawker or a peddler, you know, is like somebody that's, you know, got a shoeshine box around their hand or is, you know, walking around saying, buy the Street Sense magazine, and a transient merchant would be something a little more stable than that, which would seem, if you ask me as a linguistic matter, I would say she's not a hawker or a peddler. She's, you know, one step up from that. And my understanding of the way that you read the ordinance, that is a good interpretation, yes. But then your way of harassing her is to say that there's also a private property limitation, which doesn't seem to be in any written document anywhere. Correct. Okay. That seems to be what's happening currently. On the ground. So what do we do with that? I mean, this is all outside the record. Yes, it is. Unfortunately, this is all outside the record, and so I can hypothesize. What's in the record is essentially a plaintiff filed a lawsuit alleging that the city had violated her constitutional rights by creating this restricted area that did not permit her to sell in the downtown. The city then amended that ordinance, and that restricted area is no longer there, and so she is permitted to sell in the downtown area. She did not file an application for four of the years that she is claiming she's entitled to damages for a license. But she also knew that she was facing this 10-minute limitation, right? She did. Arguably she did. I guess I can't speak for her. I don't know that she knew that. But, yes, arguably she knew there was a 10-minute violation. And so the amended complaint and the second verified complaint then moved their argument to more of a, well, there's still a 10-minute rule, and the 10-minute rule is unconstitutional. Was the contours of the 10-minute rule with the distinction between hawkers, peddlers, has that been consistent, or was that distinction added in 2011? I don't believe any distinction was added in 2011. I believe only pieces were removed regarding the restricted area. If she believed she was a transient merchant, then from the very beginning she wouldn't have thought she was subject to the 10-minute rule. Correct. Now, we believe that the district court correctly decided that the 10-minute rule is constitutional. There are numerous cases that suggest that you can completely ban sales in a downtown area for a legitimate purpose and legitimate reasons if you don't violate the Equal Protection and Due Process, which we believe there was no violation here. And so the 10-minute rule is constitutional. And so whether or not she feels harassed, whether or not she has to move a little bit in her mobile hot dog cart, which she states is a mobile cart. Then how far do you have to move? Well, that, interestingly, Your Honor, has never been argued or discussed until today. There was no discussion in any brief or in any legal argument or factual argument as to a clarification regarding that. You're outside the record, and you say she has, in fact, moved at times. Do you have any memory of how far she moved on those occasions? My understanding from my conversation with the city was that she moved off of the sidewalk onto a grassy area on the county property, and that was sufficient, and we were done. So we're talking 5, 10 feet. Thus far, that's how it's been applied. I think everyone's sort of wondering, is the 10-minute rule legal and constitutional, and then can we apply it? And if so, they will apply it, I believe. And our argument is, and the district court found, we believe properly, that the 10-minute rule is constitutionally supported. There is no violation of any due process or equal protection or dormant commerce clause with the plaintiff in this case based simply on the 10-minute rule. Its application is a little shady, as you've noted, and not as crystal clear as it should be. And again, we can amend ordinances and try to clarify that, but that's outside the scope of what's before this court. What's before this court is, essentially, her claim that she wasn't allowed to sell, but she didn't apply to sell in 2010, 2011, or 2012, or until 2013. Thus, how can she have a violation of her rights if she didn't even apply? Effectively, you're saying she only applied in 2013. I thought both your adversary and some of the record indicated that she had filed pieces of paper that were applications on some other times, and you had said they were insufficient to be a real application. She applied in 2009 and was awarded a license and was not permitted to sell in the restricted area. That's the one year we may be talking about regarding damages. But as we've discussed, the plaintiff didn't substantiate her damages for that year. She then applied again for a license in 2011. The city sent a letter saying, we'll grant your license if you finish the rest of the requirements. You submit your bond, you submit your license. Who are those requirements written? The requirements are written, one, in the letter that they submitted to her, but they're also in the application process. She knew what she had to do to get her license. So anybody who wants an application for anything in the city has to meet those requirements? Because they're not in the ordinance. They're not in the ordinance. They need to meet it for the Hawker Peddler Transient Merchant, yes. But at least in principle, you're saying that you told her the application is deficient and that she never attempted to cure. Correct, correct, in 2011. She then never applied in 2012, nor in 2010. And again, through 2010, 2011, 2012, she didn't even have a commissary to support her hot dog stand. So our argument is, if there are damages, they're limited to potentially one summer in 2009. The plaintiff didn't factually support or legally support her argument that she suffered those damages or what those damages were, and thus the district court was proper in granting our motion for summary judgment as to damages as well as the other claims, and that even if she's restricted now by the 10-minute rule, that 10-minute rule is constitutional and it does not violate her legal protection or her due process rights, nor does it violate the down motion. And the 10-minute rule is applied toóit only appliesóthis 10-minute rule applies only to hawkers and peddlers. Is there any other application in the ordinance of such a rule? Not to my understanding. It applies only to hawkers and peddlers who, by the city's understanding, are people who are operating on a public area. Okay, thank you, counsel. And a hawkeróhow's hawker defined? That is defined in the ordinance. I don't have it at my fingertips. I mean, it is defined in the ordinance that's presented as one of the exhibits, but I don't have it. Okay, it's commercial. Yes, it's commercial. It's a sale of goods, and I'm sorry, I don't have it specifically. Okay, thank you, counsel. Thank you, Your Honors. With the remaining time I have, at first I do want to address the issue, and I understand this may be a little bit outside of the record, but I'm offering this as a comparison to the existing ordinance that we're looking at with respect to the city of Monroe. The issue of moving every 10 minutes. This specific ordinance does not indicate, as I indicated before, how far you do have to move. Was that one of the objections that was litigated below? No, because we've never gotten to it. I think it's probably correct to say that the city, who has not been happy about the hot dog cart being thereó during the summer, but no citations have been issued. No one has moved in that regard. So it hasn't been litigated because they haven't acted. Maybe they're waiting for the appeal to get done. But I'm just citing a case that they relied on pretty heavily in their briefing, which is the People v. Litvin case, the 312 MISH 57 case from the Supreme Court of Michigan. In that case, we had aóit's an older case, 1945ó but we had a situation where we had an ordinance that dealt with restricting the operation of truly unregulated vendors in private parking lots, floors and things such as that. The ordinance that was adopted indicated that they could not stay in one spot, but importantly, within the ordinance indicated that they actually had to move within a particular period of time. I'm sorry. So with respect to the particular ordinance, we're left wondering, how far do you have to move? And I understand that isn't exactly, but since it's been discussed, I want toó What is your claim that the 10-minute rule is unconstitutional? It's unconstitutional because it createsóand by example, I will go back to the Litvin case as well. In that particular case, the court distinguished a long line of cases in the state of Michigan which indicated that the class legislation or the class discrimination between local versus permanent residents, that if you did anything to create a burden, it would be unconstitutional discrimination under the Equal Protection Clauses of the United States and Michigan constitutions. That case, you called it Litvin? Litvin, L-I-V-I-N, okay. Correct. So they distinguished a long line of cases which indicated that it would be an unlawful, unconstitutional discrimination by noting that in the Litvin case, the basis was this. There was evidence in the record that there had been significant problems and that police had to be regularly involved with these parking lots. And they made an important distinction that it was upheld because of the police issues and in contrast to the cases we cited in our brief, not for the financial benefit of a few. In our case, it's very clear that their decisions are based upon protecting a few people only. Ten-minute rules based on that? Yes, correct, because it makes it difficult, if not impossible, to operate within the city of Monroe. It obviously protects a restaurant if somebody can't set up a restaurant out on the sidewalk in front of them. That is correct. Let me ask you this because I discovered in the briefs there is a definition of hawker and peddler and a fairly extensive one of transient merchant. It says a hawker or peddler is a person, in relevant part, who goes upon the streets, sidewalks, or public alleys selling, offering for sale, or taking orders for any kind of edible item, goodware, merchandise, and so on and so on. So that does sound like you're a hawker or peddler. Transient merchant is defined as a person engaged temporarily in the sale from any lot, premises, building, or structure. Is that your understanding, and has that been discussed about that difference? Because it does sound private, although a lot is a sidewalk different from a lot. Otherwise, it sounds like a pop-up, kind of a pop-up store. You're a transient merchant if you operate from a premises, building, or structure. It was raised in discussions with Judge Lawson off the record, but the distinction was never actually ruled upon in the case. When I was listening to both of you, she actually seemed to be saying they were harassing you more than you did. You said she had operated, apparently, relatively successfully. Do you have any view on that? I will say that. There were individuals within the city who were going to other elected officials in the county and in the city asking those elected officials to take certain actions that were within their discretion and within their authority, the county clerk, the city clerk. And fortunately for my client, those individuals declined to take any of the requisites. So at least from your point of view, she really did operate relatively successfully. She moved occasionally, but it didn't grossly interfere with her business. That is correct. Okay. What about her deposition regarding damages? What about their position on that? Well, the deposition has some items that I'm sure that if she was cross-examined in front of a fact finder that they could probably make some points on. But the posture of the case was a summary judgment motion. And they can cite to things where they can argue that she was inconsistent with respect to certain dollar amounts and things such as that, but I think that's cross-examination material. I don't think that's summary judgment material. Okay. Thank you for your consideration this morning. The case will be submitted. The clerk may call the next case.